## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MAINE

CHAD C. DIONNE,                            )
MICHELLE A. DIONNE                         )
                                           )
      PLAINTIFFS                    )
                                           )
v.                                         )
                                           )          Case No. 17-
NATIONSTAR MORTGAGE, LLC                   )
                                           )
      DEFENDANT                     )

### COMPLAINT (REDACTED VERSION))

### REQUEST FOR JURY TRIAL

### I.      INTRODUCTION

The Plaintiffs, Chad and Michelle Dionne (collectively referred to herein as the "Plaintiffs" or the "Dionnes") have struggled with Nationstar as their mortgage servicer for the past two and a half years. In 2014 Nationstar began attempting to collect money from the Dionnes that the Dionnes did not actually owe. After a year and a half of trying to correct their Loan account, including filing a lawsuit against Nationstar in the United States Bankruptcy Court, the Dionnes settled their claims against Nationstar. The Dionnes' Loan was then supposed to be treated as current and they continued to make their monthly payments. Just two weeks after signing the settlement agreement (the "Settlement"), however, Nationstar sent the Dionnes a monthly statement alleging that the Dionnes were overdue one payment. Despite the Dionnes' repeated efforts to again correct Nationstar's error, Nationstar continues to send notices and statements alleging that the Dionnes are past due on their Loan. Because Nationstar is inaccurately classifying the Dionnes' Loan as past due, Nationstar will not accept the regular monthly payment online and the Dionnes are forced to incur phone payment fees and certified

mail fees to make their payments to Nationstar. As a direct result of Nationstar's continued mismanagement of the Dionnes' Loan, the Dionnes once again fear that Nationstar's misrepresentations of amounts owed will lead to a foreclosure of their home. The Dionnes have started making extra payments each month to prevent this from happening. The Dionnes have lost all trust in Nationstar as their mortgage servicer and fear daily that Nationstar is unable to properly service their loan and will force them and their young son to have to move. They bring this action against Nationstar for events and claims occurring since the Settlement of their prior claims in June 2016. Due to its misconduct, Nationstar is liable for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*, and its implementing regulations under 12 C.F.R. §§ 1024.35 and 1024.36 ("Regulation X"); the Maine Unfair Trade Practices Act, 5 M.R.S. § 205-A *et seq.*; the Maine and Federal Fair Debt Collection Practices Acts, 32 M.R.S. § 11001 *et seq.* and 15 U.S.C. § 1692 *et seq.*; the Bankruptcy Code's Discharge Injunction, 11 U.S.C. § 524; and the Maine Consumer Credit Code, 9-A M.R.S. § 9-403.

## II.  JURISDICTION AND VENUE

1.  The jurisdiction of this Court is conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2.  Venue is proper as the Plaintiffs are residents of York County, Maine, all relevant events occurred in this District, and the Defendant was doing business in Maine during all relevant times.

## III. PARTIES

3.    Plaintiff Michelle Dionne is a natural person residing in Arundel, Maine.

4.    Plaintiff Chad Dionne is a natural person residing in Arundel, Maine.

5.    Chad and Michelle Dionne are consumers in that they were offered and extended credit via a home loan mortgage and note from Homecomings Financial LLC, which is now being

serviced by Nationstar Mortgage LLC ("Nationstar"). A true and accurate copy of the Mortgage and Note (collectively referred to herein as the "Loan") are attached hereto as Exhibit 1.

6.      Nationstar is a limited liability company with a principal place of business in Texas.

7.      Nationstar is a loan servicer and began servicing the Dionnes' Loan in or around December 2008.

8.      Upon information and belief, Nationstar became the owner of the Dionnes' Loan on or around February 19, 2014.

9.      When Nationstar began servicing the Dionnes' Loan, the Dionnes had not made their December 2008 payment.

10.     The Dionnes were in default under the terms of the Note when Nationstar began servicing their Loan.

11.     Nationstar treated the Loan as being in default and delivered a 10-day payment reminder letter to the Dionnes on December 10, 2008.

12.     Nationstar uses the mail to deliver notices, monthly mortgage statements, and other documents and communications to borrowers as part of its regular business.

13.     The principal purpose of Nationstar's business is the collection of debts.

14.     Nationstar regularly collects debts or attempts to collect debts alleged owed to other entities.

15.     The majority of the debts Nationstar acquires for servicing are nonperforming loans.

16.     Nationstar is licensed as a Debt Collector with the Maine Bureau of Consumer Credit Protection.

17.     Nationstar is a debt collector as defined by 15 U.S.C. § 1692a(6) and 32 M.R.S. § 11002(6).

## IV.    PRE-SETTLEMENT FACTS

18.     The Dionnes refinanced the Note and Mortgage (collectively referred to herein as the "Loan") on their primary residence located at 267 Old Alfred Road, Arundel, Maine, with Homecomings Financial, LLC, on June 21, 2007. *See* Exhibit 1.

19.     The Dionnes fell behind on the Loan in late 2008.

20.     Nationstar acquired servicing of the Loan in December 2008.

21.     The Dionnes had not made the December 2008 Loan payment when Nationstar became servicer of the Loan.

22.     The Dionnes filed a Chapter 13 Bankruptcy Petition on August 6, 2009, in the United States Bankruptcy Court for the District of Maine, Case number 09-21224.

23.     One of the reasons the Dionnes filed for Chapter 13 protection was to save their home.

24.     Nationstar filed a Proof of Claim for alleged arrears owed on the Loan of $6,478.80 on August 28, 2009. A true and accurate copy of Nationstar's Proof of Claim is attached hereto as Exhibit 2.

25.     The Debtors' Chapter 13 Bankruptcy Plan (hereinafter the "Plan") proposed that the Dionnes would make payments to the Trustee, who would then pay Nationstar the arrears in full. A true and accurate copy of the Plan is attached hereto as Exhibit 3.

26.     Per the Plan, the Debtors were to make ongoing monthly mortgage payments directly to Nationstar beginning in September 2009. *See* Exhibit 3.

27.     The Court confirmed the Plan on November 25, 2009. A true and accurate copy of the Confirmation Order and proof of service to Nationstar is attached hereto as Exhibit 4.

28.     The Chapter 13 Trustee made payments to Nationstar from December 14, 2009, to November 14, 2013, said payments totaling $6,478.80. A true and accurate copy of the Trustee's Status of Claims is attached hereto as Exhibit 5.

29.     While in bankruptcy, the Dionnes made their mortgage payments from September 2009 through their discharge in October 2014.

30.     Throughout the duration of the Dionnes' Plan, Nationstar did not file any Notice of Mortgage Payment Change, Notice of Post-Petition Fees and Expenses, or any amended Proof of Claim, at any time, pursuant to Fed. R. Bankr. P. 3002.1.

31.     During the course of the Dionnes' Plan and throughout their Bankruptcy, Nationstar did not send to the Dionnes any notice of an escrow shortage, nor did Nationstar send any other notice or statement that the Dionnes owed any additional amounts beyond the regular monthly Loan payment.

32.     On September 23, 2014, the Dionnes filed a Motion for Request for Discharge, a true and accurate copy of which is attached hereto as Exhibit 6, which they served on Nationstar. The Court set October 20, 2014, as the deadline for objecting to this motion and scheduled a hearing on the motion for October 29, 2014.

33.     Nationstar did not file an objection to the Motion for Discharge. The Chapter 13 Trustee consented to discharge on October 23, 2014. A true and accurate copy of the Bankruptcy Court's Docket Report is attached hereto as Exhibit 7.

34.     On October 23, 2014, the Trustee filed a Notice of Final Cure Payment and provided a payment history in support thereof. Nationstar received service of the Notice. A true and accurate copy of the Notice and certificate of service is attached hereto as Exhibit 8.

35.     The Dionnes received their Discharge and Completion of Plan Order on October 24, 2014. Nationstar received notice of the Discharge. A true and accurate copy of the Discharge and Completion of Plan Order is attached hereto as Exhibit 9.

36.     On November 14, 2014, by and through its counsel, John A. Doonan, Esq., Nationstar filed a Response to Notice of Final Cure Payment, indicating that the Dionnes paid in full the amount required to cure the default on Nationstar's claim and that the Dionnes were current with respect to all payments on the Loan consistent with 11 U.S.C. § 1322(b)(5) of the Bankruptcy Code. A true and accurate copy of Nationstar's Response is attached hereto as Exhibit 10.

37.     The Dionnes were current on their Loan at the time of their discharge on October 24, 2014.

38.     Nationstar failed to credit the Dionnes' payments for arrears and ongoing payments made under the Plan to bring the Loan current as of October 24, 2014. Instead, Nationstar's records continued to show the Loan as being one month behind. A true and accurate copy of the Nationstar Loan history is attached hereto as Exhibit 11.

39.     The Dionnes continued to make their ongoing monthly mortgage payments to Nationstar following receipt of their discharge.

40.     In November 2014, Nationstar began delivering notices to the Dionnes alleging that they were past due on their Loan payments, delinquent on their Loan, and that they owed additional monies due to an escrow shortage.

41.     The Dionnes filed an Adversary Proceeding against Nationstar in their bankruptcy case, Case No. 15-02036, alleging violations of Bankruptcy Rule 3002.1, the Order Confirming the Chapter 13 Plan, and the Discharge Injunction under 11 U.S.C. § 524.

42.     The parties reached settlement and entered into a Confidential Settlement Agreement and Release (the "Settlement"), ████████████. A true and accurate copy of the Settlement Agreement is attached hereto as Exhibit 12 (under seal).

43.     As part of the Settlement, ████████████████████████████████████.

### V.     POST-SETTLEMENT FACTS

44.     The Dionnes have made all of their monthly mortgage payments from June 2016 to the present, beginning with a payment of $2,089.56 on May 18, 2016, mailed in and processed around June 1, 2016, and a payment of $2,100.69 made on or around June 15, 2016, which included a $14 online payment fee. *See* Exhibit 11.

45.     Nationstar continued to represent that the Dionnes were past due a payment on their Loan despite the Dionnes making their mortgage payments in the correct amount each month. Attached hereto as Exhibit 13 are true and accurate copies of proof of payments made to Nationstar for April, May, June, July, and August 2016.

46.     Upon information and belief, Nationstar brought the Loan current as agreed on or around June 1, 2016, but on June 30, 2016, reversed the correction and misapplied the Dionnes' past payments, just as Nationstar had done prior to the Settlement. *See* Exhibit 11.

47.     Upon information and belief, Nationstar again failed to properly credit the Dionnes' payments on the Loan made pursuant to their Plan while in bankruptcy to the Loan account, resulting in Nationstar representing that the Loan was past due. *Id.*

48.     Nationstar was obligated to apply the Dionnes' monthly mortgage payments as follows: 1st) interest, 2nd) principal, and 3rd) escrow, as required under the terms of the Mortgage. *See* Exhibit 1 at ¶2.

49.     The June 16, 2016, mortgage statement from Nationstar correctly showed the Dionnes as being current on their Loan payments. A true and accurate copy of the June 16, 2016, mortgage statement is attached hereto as Exhibit14.

50.     The July 19, 2016, mortgage statement from Nationstar, however, incorrectly stated that the Dionnes were "Overdue" one payment and now owed $4,048.97, including $303.88 in "Total Fees and Charges." This mortgage statement is dated after the effective date of the Agreement. A true and accurate copy of the July 19, 2016, mortgage statement is attached hereto as Exhibit 15.

51.     The Dionnes made a payment of $2,096.64 online on August 3, 2016. *See* Exhibit 13.

52.     The August 18, 2016, mortgage statement from Nationstar showed an "Overdue Payment" amount and a "Total Amount Due" of $4,105.41. A true and accurate copy of the August 18, 2016, mortgage statement is attached hereto as Exhibit 16.

53.     The Dionnes continued to make payments of at least $2,086.69 for each month. *See* Exhibit 11.

54.     In a mortgage statement dated September 20, 2016, Nationstar misrepresented payments as being "Overdue" and provided a "Total Amount Due" that was incorrect due to Nationstar's misapplication of the Dionnes' mortgage payments. A true and accurate copy of the September 20, 2016, mortgage statement is attached hereto as Exhibit 17.

55.     On November 1, 2016, the Plaintiffs, through counsel, delivered a Qualified Written Request ("QWR"), Request for Information ("RFI"), and Notice of Error ("NOE") to Nationstar at their designated address, in compliance with 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35 and 1024.36. A true and accurate copy of the November 1, 2016, QWR/RFI/NOE is attached hereto as Exhibit 18.

56.     In the November 1, 2016, QWR/RFI/NOE, the Plaintiffs alleged errors regarding Nationstar's application of their payments and the status of their Loan. They also requested information to help determine how Nationstar was applying their payments. *See* Exhibit 18.

57.     Nationstar received the QWR/RFI/NOE on November 7, 2016. *See* Exhibit 18.

58.     Nationstar acknowledged receipt of the QWR/RFI/NOE in a letter dated November 8, 2016, and stated they would provide a response no later than December 20, 2016. A true and accurate copy of the November 8, 2016, letter is attached hereto as Exhibit 19.

59.     On December 15, 2016, Nationstar delivered a "Payment Options Available" notice to the Dionnes, stating that their monthly mortgage payment had not been received. A true and accurate copy of the December 15, 2016, notice is attached hereto as Exhibit 20.

60.     In a letter from Nationstar to the Dionnes dated January 7, 2017, Nationstar stated that the Dionnes' Loan was "delinquent" and provided "**Information on Avoiding Foreclosure**" (emphasis in original). A true and accurate copy of the January 7, 2017, letter is attached hereto as Exhibit 21.

61.     Nationstar purported to respond to the Dionne's November 1, 2016, QWR/RFI/NOE in a letter dated January 12, 2017. Nationstar acknowledged receiving monthly payments from the Dionnes for June 2016 through January 2017. A true and accurate copy of the January 12, 2017, letter is attached hereto as Exhibit 22.

62.     Nationstar did not, however, correct the error of alleging that the Dionnes were past due on the Loan. *See* Exhibit 22.

63.     Nationstar did not provide all of the information requested in the November 1, 2016 QWR/RFI/NOE. *See* Exhibits 18, 22.

64.     In a letter from Nationstar to the Dionnes dated January 13, 2017, Nationstar alleged that the Dionnes' January 1, 2017, Loan payment had not been received. A true and accurate copy of the January 13, 2017, letter is attached hereto as Exhibit 23.

65.     In a letter from Nationstar to the Dionnes dated February 13, 2017, Nationstar alleged the Dionnes' February 1, 2017, payment had not been received. A true and accurate copy of the February 13, 2017, letter is attached hereto as Exhibit 24.

66.     In a letter from Nationstar to the Dionnes dated March 14, 2017, Nationstar alleged the Dionnes' March 1, 2017, payment had not been received. A true and accurate copy of the March 14, 2017, letter is attached hereto as Exhibit 25.

67.     On March 16, 2017, the Dionnes delivered a second QWR/NOE/RFI in compliance with 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35 and 1024.36 to Nationstar. A true and accurate copy of the March 16, 2017, QWR/NOE/RFI is attached hereto as Exhibit 26.

68.     The Dionnes again explained to Nationstar that they had made all Loan payments required, that Nationstar had admitted as such in their January 12, 2017, letter in response to the Dionnes' First QWR/NOE/RFI, yet Nationstar was still reporting them as past due on the Loan. *See* Exhibit 26.

69.     Nationstar received the Dionnes' second QWR/NOE/RFI on March 21, 2017, as evidenced by the return receipt, a true and accurate copy of which is attached hereto as Exhibit 27.

70.     The Dionnes paid counsel for the fees and certified mailing costs incurred in sending the March 16, 2017, QWR/NOE/RFI.

71.     Also on March 16, 2017, the Dionnes delivered a demand letter pursuant to the Maine Unfair Trade Practices Act ("UTPA"), 5 M.R.S. § 205-A *et seq.*, to Nationstar.

72.     Nationstar received the UTPA letter on March 21, 2017.

73.     In a letter dated March 23, 2017, Nationstar acknowledged receipt of the Dionnes' March 2017 dispute letters and stated that Nationstar would have a response by May 1, 2017. A true and accurate copy of the March 23, 2017, letter is attached hereto as Exhibit 28.

74.     To date, Nationstar has not provided the promised response, and has not provided evidence that they conducted a reasonable investigation of the alleged errors or that they corrected the errors.

75.     The Dionnes continued to make mortgage payments in the correct amounts each month.

76.     In a letter from Nationstar to the Dionnes dated April 11, 2017, Nationstar stated that the Loan was now "30 days or more past due." The notice mentioned selling the home as an "alternative to foreclosure." A true and accurate copy of the April 11, 2017, letter is attached hereto as Exhibit 29.

77.     In a letter from Nationstar to the Dionnes dated April 14, 2017, Nationstar alleged that the Dionnes' April 1, 2017, payment had not been received. A true and accurate copy of the April 14, 2017, letter is attached hereto as Exhibit 30.

78.     Based on Nationstar's repeated misrepresentations of the status of their Loan and Nationstar's continued failure to correct the error, the Dionnes feared that their Loan was heading to foreclosure status. The Dionnes did not want to risk losing their home so they began making extra payments each month to try and stop Nationstar from proceeding to foreclosure. They paid $2,200.00 for May 2017, instead of the required $2,086.69.

79.     Nationstar has also been misreporting on the Dionnes' credit reports that the Dionnes are past due on the Loan.

80.     Nationstar's inaccurate reporting contributed to Mr. Dionne being denied credit to buy tools for his auto repair shop.

81.     The Dionnes also fear that they will never be able to refinance their Loan away from Nationstar because of Nationstar's inaccurate credit reporting. They also fear that if they lost their house they could not rent or get another mortgage to buy a new home because of their credit reports.

82.     The Dionnes have a young son who is attached to the home and to the gardens he has planted in its yard. He attends the local school and has friends in the area. The Dionnes fear having to uproot him if they lose their home.

83.     When the Dionnes settled their claims with Nationstar in June 2016, they were relieved and felt they could safely move forward in their home and their lives. They felt comfortable enough to finally open the auto repair business they had been wanting to start for years. They had delayed in starting the business because they wanted to first be certain their home was secure. Now, however, not only are they trying to make their new business succeed, but they also have to again deal with Nationstar's mismanagement of their Loan and the looming threat of a wrongful foreclosure.

84.     When Nationstar immediately started telling the Dionnes that they were past due after the Dionnes diligently made all their payments, the Dionnes again feared that they would lose their home. They thought "here we go again." The Dionnes felt a sense of hopelessness and lost all confidence in Nationstar to properly manage their Loan. At this point, the Dionnes believe that no matter what they do, Nationstar will just continue to mismanage their Loan.

85.     Upon information and belief, Nationstar has engaged in the same or similar conduct of misapplying mortgage payments, inaccurately reporting borrowers as past due, and/or failing to correct such errors after receiving notice.

86.     Upon information and belief, Nationstar will continue to fail to correct their errors and continue to misrepresent that the Dionnes are behind on their Loan payments.

87.     Upon information and belief, Nationstar has engaged in a pattern and practice of noncompliance with 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35 and 1024.36 and has engaged in conduct in violation of the bankruptcy discharge injunction, 11 U.S.C. § 524, and the FDCPA in other cases. *See e.g. allegations in: Chad and Michelle Dionne v. Nationstar Mortgage, LLC,* U.S. Bankruptcy Court, District of Maine, A.P. No. 15-02036 (filed 12/10/2015); *Ackley v. US Bank N.A., Nationstar Mortgage LLC et al,* U.S. District Court, Maine, No. 2:15-cv-00042 JDL (filed 1/29/2015); *Ackley v. US Bank N.A., Nationstar Mortgage LLC et al*, U.S. District Court, Maine, No. 2:16-cv-00015 JDL (filed 1/12/2016); *The Bank of New York Mellon as Trustee et al v. David and Leanne Pooler*, Maine District Court, Dover-Foxcroft, No. RE-15-19 (First Amended Answer with counterclaims filed 7/28/2016); *Mark Tanner v. Nationstar Mortgage*, State of Maine Superior Court, York, No. CV-2015-22 (filed 2/3/2015).

## VI.    CLAIMS

### <u>COUNT ONE</u>: Violation of the Bankruptcy Discharge Injunction, 11 U.S.C. § 524

88. The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

89. Nationstar had notice of the Dionnes' bankruptcy, participated in the bankruptcy, and had notice of the bankruptcy discharge. *See* Exhibits 2, 4, 6, 7, 9, 10.

90.     Nationstar had notice of the errors regarding its misapplication and mis-crediting of the Dionnes' payments on the Loan. *See* Exhibits 18, 19, 22, 26, 27, 28.

91.     From July 5, 2016, onward, Nationstar violated the Bankruptcy Discharge Injunction, 11 U.S.C. § 524(i), as enforced by Code section 105, by continuing to fail to credit payments in the manner required by the Plan, causing Nationstar to also continue to misrepresent that the Dionnes were behind on their Loan payments. *See* Exhibits 11, 15, 16, 17, 21, 23, 24, 25, 29, 30.

92.     Nationstar has continued to try to collect on money that was paid through the bankruptcy as part of the Dionnes' confirmed Plan. *Id.*

93.     Nationstar has also incorrectly reported the Dionnes as being past due on the Loan to the credit reporting agencies.

94.     The violations alleged are for Nationstar's conduct *after* the effective date of the Settlement in failing to properly apply and credit the Dionnes' payments.

95.     Nationstar's conduct caused the Dionnes to receive notices that they were "delinquent" on their Loan, and notices regarding options to avoid foreclosure. *Id.*

96.     Nationstar's conduct was harassing and coercive in that it caused the Dionnes to pay extra money that the Dionnes did not owe on the Loan each month to ward off the wrongful foreclosure and caused them to suffer emotional distress as described above.

97.     Nationstar has failed to correct its errors even after many efforts by the Dionnes and their counsel to correct the issues. *See* Exhibits 11, 18, 19, 21, 23-26, 29, 30.

98.     Nationstar's conduct was and continues to be outrageous in light of Nationstar's past misconduct and settlement of previous claims, attempts by the Dionnes and their counsel to correct the continued errors, Nationstar's admission that the Dionnes made their mortgage payments each month, and Nationstar's persistence in delivering past due, delinquency, and

foreclosure prevention notices to the Dionnes instead of properly investigating and correcting the errors.

99.    Upon information and belief, including the Dionnes' previous case and other cases filed against Nationstar, Nationstar has engaged repeatedly in similar violations of the Bankruptcy Code's discharge injunction.

100.    Nationstar is in violation of the discharge injunction pursuant to 11 U.S.C. § 524, issued in the Dionnes' bankruptcy case, and the Dionnes are entitled to recover relief from Nationstar, including but not limited to any actual damages, including emotional damages, punitive damages, and costs and attorney's fees in an amount to be determined by the Court pursuant to 11 U.S.C. § 105.

## COUNTS TWO and THREE: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* and the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. § 11001 *et seq.*

101.    The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

102.    Within one year prior to the filing of this suit, and after the effective date of the Settlement, by example only and without limitation, Nationstar violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* and the Maine Fair Debt Collection Practices Act 32 M.R.S.A. § 11001 *et seq.* (collectively the "FDCPA"), as outlined above, including but not limited to:

> a.    Falsely representing the character, amount, and legal status of the Loan debt through letters, notices, and statements dated from at least July 2016 to the present (15 U.S.C. § 1692e(2); 32 M.R.S.A. § 11013(2)(B)). *See* Exhibits 15, 16, 17, 21, 23-25, 29, 30;

b.   The use of false representations and deceptive means to collect on the Loan debt through letters and statements wrongfully alleging past due amounts, delinquency status, and impending foreclosure (15 U.S.C. § 1692e(10); 32 M.R.S.A. § 11013(2)). *Id;*

c.   Engaging in conduct, the natural consequence of which was to harass, oppress or abuse the Dionnes in connection with the collection of the mortgage debt by delivering notices seeking payment of monies not owed, misapplying payments, and providing notices regarding the alleged delinquency status of the loan and foreclosure prevention options (15 U.S.C. § 1692d ; 32 M.R.S.A. § 11013(1)). *Id;*

d.   Using unfair or unconscionable means to collect or attempt to collect on the Loan debt through letters, statements, misapplication of payments, and veiled threats of foreclosure (15 U.S.C. § 1692f; 32 M.R.S.A. § 11013(3)). *Id;* and

e.   Communicating inaccurate information to the credit reporting agencies alleging that the Dionnes were past due on their Loan payments when Nationstar knew that they were not (15 U.S.C. § 1692e(8); 32 M.R.S.A. § 11013(2)(H).

103.   As a result of the conduct, actions, and inactions of Nationstar, the Dionnes suffered actual damages including, without limitation, legal fees and costs, harassment, coercion, fear and anxiety, and other emotional and mental distress as detailed above.

104.   The Dionnes are entitled to recover actual damages, including emotional distress damages, statutory damages, costs and attorney's fees from Nationstar, and such further relief as may be just and proper.

**COUNT FOUR: Illegal, Fraudulent or Unconscionable Conduct in Attempted Collection of Debts In Violation of the Maine Consumer Credit Code, 9-A M.R.S. § 9-403(G)**

105.    The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

106.    Nationstar attempted to collect on the mortgage debt after such activity had been barred by a final order of a court of the United States, in violation of 9-A M.R.S. § 9-403(G) (the "MCCC").

107.    The United States Bankruptcy Court for the District of Maine entered its Order Confirming the Dionnes' Chapter 13 Plan on November 28, 2009; the Plan called for the Dionnes to pay the arrears on the mortgage Loan through the Plan and make monthly ongoing mortgage payments directly to Nationstar. *See* Exhibits 3, 4.

108.    The Dionnes completed their Chapter 13 Plan and the Court Ordered their Discharge Upon Completion of Plan on October 24, 2014. *See* Exhibit 9.

109.    Nationstar admitted that the Dionnes completed the terms of their Plan regarding the mortgage and that the Loan was current upon discharge. Exhibit 10.

110.    Thereafter, Nationstar failed to treat the Loan as being current, in violation of the Court's Orders Confirming the Plan and Discharge Upon Completion of the Plan.

111.    The current violations of the MCCC are for Nationstar's continued failure to treat the Loan as current even after Settlement in July 2016.

112.    Nationstar continues to misrepresent the status of the Dionnes' Loan and attempts to collect on money barred from collection by the Bankruptcy Court's Order Confirming the Plan and the Discharge Order in violation of 9-A M.R.S. § 9-403(G). *See* Exhibits 15, 16, 17, 21, 23-25, 29, 30.

113.    Such violations constitute a violation of the Maine Unfair Trade Practices Act pursuant to 9-A M.R.S. § 9-408.

114.    The Plaintiffs demand judgment for actual damages, including emotional damages, statutory damages, punitive damages, their attorneys' fees and costs, for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

## COUNT FIVE: Violation of the Maine Unfair Trade Practices Act, 5 M.R.S.A. §205-A *et seq.*

115.    The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if fully set out herein.

116.    The Defendant violated the Maine Unfair Trade Practices Act ("UTPA") by engaging in unfair and deceptive conduct, including but not limited to: failing to maintain the Loan as current, failing to correct the misapplication of payments, continuing  to collect and attempt to collect from the Dionnes money that is not owed, failing to properly investigate and correct the errors after notice, misrepresenting that the loan is past due and delinquent, and providing information about foreclosure alternatives when the Dionnes have made all required monthly payments on the Loan.

117.    Such conduct was unfair and deceptive as it would mislead the average consumer and did mislead the Dionnes regarding the status of their Loan and the amounts owed thereon.

118.    Based on their experience with Nationstar, the Dionnes lost all confidence in Nationstar to correct the error and cease all foreclosure activity.

119.    Nationstar's unfair and deceptive conduct caused the Dionne's a monetary loss as the Dionnes felt they had no choice but to pay extra amounts each month to Nationstar, amounts the Dionnes did not in fact owe, to ward off a wrongful foreclosure.

120.     The Plaintiffs demand judgment for actual damages, including emotional damages, their

attorneys' fees and costs, for pre-judgment and post-judgment interest at the legal rate, and such

other relief the Court does deem just, equitable, and proper.

**COUNT SIX:** Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq.*, and Regulation X, 12 C.F.R. §§ 1024.35 and 1024.36

121.     The Plaintiffs repeat and reallege and incorporate by reference the paragraphs above as if

fully set out herein.

122.     The Dionnes, through counsel, delivered a QWR/RFI/NOE to Nationstar per 12 U.S.C. §

2605 and 12 C.F.R. §§ 1024.35 and 1024.36 on November 1, 2016. *See* Exhibit 18.

123.     Nationstar did not provide a response per 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35 and

1024.36 within 30 business days, nor did Nationstar provide a response per 12 U.S.C. § 2605 and

12 C.F.R. §§ 1024.35 and 1024.36 within 15 business days thereafter.

124.     On January 12, 2017, Nationstar provided a response to some of the errors alleged and

information requested in the QWR/RFI/NOE but did not conduct a reasonable investigation and

correct the errors alleged by the Dionnes, nor did Nationstar provide an explanation of the

amounts alleged owed or an accounting of how the terms of the Settlement were applied to the

Loan as requested. *See* Exhibit 22.

125.     Nationstar continued to send notices to the Dionnes, repeatedly alleging that the Dionnes

were past due and delinquent on their Loan. *See* Exhibits 15, 16, 17, 21, 23-25, 29, 30.

126.     As a result, the Dionnes paid their counsel fees and the costs of certified mail to send a

second QWR/NOE/RFI to Nationstar on March 16, 2017. *See* Exhibit 26.

127.     Nationstar again failed to conduct a reasonable investigation of the error, and failed to

provide the Dionnes with 1) a written notification that either there was no error or that the error

had been corrected, 2) a statement of the reason(s) for that determination, 3) a statement of the

Dionnes' right to request documents relied upon by the servicer in reaching that determination, and 4) contact information for the point of contact at Nationstar to whom the Dionnes could direct requests for further assistance.

128.    Nationstar continued to send notices to the Dionnes alleging delinquency status of the Loan and making threats of foreclosure on the Dionnes' home. *See* Exhibits 15, 16, 17, 21, 23-25, 29, 30.

129.    As a result of Nationstar's failure to correct the error and Nationstar's thinly veiled threats of foreclosure, the Dionnes began making increased monthly payments to Nationstar on the Loan in an effort to ward off a wrongful foreclosure.

130.    The two (2) QWRs/NOEs/RFIs sent by the Dionnes through counsel to Nationstar were sent to Nationstar's designated address for receipt of same and contained the names of the borrowers, the account number, and a statement of the reasons why the Dionnes believed the account was in error, including supporting documents.

131.    Nationstar's repeated failures to comply with 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35 and 1024.36 constitute a pattern and practice of noncompliance with RESPA and Regulation X.

132.    Upon information and belief, Nationstar has engaged in a pattern and practice of noncompliance with 12 U.S.C. § 2605 and 12 C.F.R. §§ 1024.35 and 1024.36 in other cases. *See, e.g., allegations in: Chad and Michelle Dionne v. Nationstar Mortgage, LLC,* U.S. Bankruptcy Court, District of Maine, A.P. No. 15-02036 (filed 12/10/2015); *The Bank of New York Mellon as Trustee et al v. David and Leanne Pooler,* Maine District Court, Dover-Foxcroft, No. RE-15-19 (First Amended Answer with counterclaims filed 7/28/2016); *Mark Tanner v. Nationstar Mortgage,* State of Maine Superior Court, York, No. CV-2015-22 (filed 2/3/2015).

133.    Had Nationstar investigated the issues and corrected the account, the Dionnes would not have been forced to incur fees and costs to send a second QWR, pay increased amounts on their mortgage to avoid wrongful foreclosure, and suffer emotional distress while worrying about losing their home and displacing their son.

134.    The Dionnes are entitled to actual damages, including but not limited to emotional distress damages, statutory damages, as well as attorneys' fees and costs, and any other relief the Court deems appropriate.

## VII.    DEMAND FOR JURY TRIAL

The Plaintiffs, Chad and Michelle Dionne, request a trial by jury on all Counts.

Dated at Portland, Maine, this 23rd day of May, 2017.

MOLLEUR LAW OFFICE

By: */s/ Andrea Bopp Stark*
Andrea Bopp Stark, Esq.
Christopher Keach, Esq.
Counsel for Plaintiffs Chad and Michelle Dionne
419 Alfred Street
Biddeford, Maine  04005-3747
(207) 283-3777
(207) 284-4558 Fax
andrea@molleurlaw.com
Chris@molleurlaw.com

TERRY GARMEY AND ASSOCIATES

Gary Goldberg, Esq.
482 Congress Street, Suite 402
Portland, ME  04101-3424
(207)899-4644
ggoldberg@garmeylaw.com